RICHARD S. SINGER et al., Plaintiffs-Appellees, v. THE CITY OF HIGHLAND PARK, Defendant-Appellant.

(No. 74-151; )

Second District (1st Division)—September 24, 1975.

Thomas H. Compere, Berle L. Schwartz, and Richard J. Hollander, all of Highland Park, for appellant.

Conzelman, Schultz, O'Meara & Snarski, of Waukegan, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The city of Highland Park, defendant in the trial court, has appealed the declaratory judgment of the circuit court holding that the city of Highland Park zoning ordinance, insofar as it applied to plaintiff's property, was invalid. The plaintiffs, the First National Bank of Highland Park as trustee of the property and Richard S. Singer as the beneficiary of the trust, filed an action in the circuit court of Lake County seeking a declaratory judgment and injunctive relief. The circuit court ruled that the present "B-1" zoning for single-family residences located on 20,000-square-foot lots was invalid. The property had been platted in accordance with "B-1" zoning resulting in 50 lots. Plaintiffs' proposed use of the subdivision was for 86 lots under the city of Highland Park's "C" zoning ordinance. The question presented herein is whether plaintiffs presented sufficient evidence to overcome the presumption of the validity of the present zoning ordinance as applied to plaintiffs' property.

The property of the plaintiffs, known as Forestwood Subdivision, is approximately a 30-acre parcel of land located on the westerly boundary of the city of Highland Park. To the west of the subject property is the city of Deerfield and the zoning and property therein, which is contiguous to the subject property, provides for houses on 12,000-square-foot lots, comparable to the "C" zoning classification of Highland Park. There are no streets connecting the city of Deerfield with the Forestwood Subdivision area. The property to the north of the subject subdivision is zoned "B-1" (20,000-square-foot lots) for a distance of 2 to 3 city blocks. Included in this area is the Red Oaks School, being a large tract immediately contiguous to the subdivision in question. The property to the northeast and east of the subject subdivision extending over to Ridge Road, a distance varying from 1 to 2 blocks, is likewise zoned "B-1" (20,000-square-foot lots) with the exception of a certain area which is nonconforming. The property located to the south of the subdivision in question is zoned "B-1" completely. It can thus be seen that, with the

exception of the city of Deerfield to the west and the nonconforming area interspersed on the other three sides of the subject property, the surrounding property is zoned primarily "B-1" or 20,000-square-foot lots.

In May 1972 Singer filed a petition with the city of Highland Park, pursuant to the city's code, seeking to have the zoning ordinance amended, so as to rezone the Forestwood subdivision from "B-1" to "C" and allow a mixed use "Community Unit Plan."[1] The City Council referred the petition to the Plan Commission and hearings were held by the Commission between June 22 and November 21, 1972. All interested parties were given an opportunity to be heard and extensive evidence was presented on behalf of the plaintiff's petition. By February 12, 1973 the Commission had recommended that the petition be denied. On April 23, 1973, the City Council considered the Commission's recommendation and voted to concur in the denial of the petition for rezoning.

Thereafter the plaintiffs brought the instant declaratory judgment action seeking to declare the zoning ordinance unconstitutional as applied to the subdivision. On behalf of the plaintiffs there was expert testimony at the trial that there was a new shopping complex being built on the south side of County Line Road in Cook County approximately 3 to 4 blocks south of the subject property and that this would have an adverse effect on the property in the area under consideration. The question that immediately arises, however, is would it be more adverse to a 20,000-square-foot lot than to a 12,000-square-foot lot? There was also testimony to the effect that the Forestwood Subdivision was suitable for either "B-1" or "C" zoning. Finally there was testimony to the effect that Singer's profit for the development would be substantially less if the zoning was not changed.

Various witnesses testified on behalf of the city of Highland Park. Several of the witnesses residing in the immediate area testified that they purchased their property relying upon the "B-1" zoning in the area, although a portion of this testimony was excluded by the trial court. The Director of Community Development for the city of Highland Park testified that he was familiar with the area and that rezoning the same for the allowance of 86 single-family home sites would have an adverse impact on the surrounding properties. He found nothing to differentiate this property from the surrounding property zoned "B-1." A real estate broker testified on behalf of the city that the price range of the homes in the area was from $75,000 to $100,000 and that in her opinion the highest and best use of the property in question was 20,000-square-foot

---

[1] This was a proposed private tennis club and apartment complex which is not involved in this appeal.

lots or the existing "B-1" zoning. She took into consideration the surrounding property and the trend of the development therein. She further testified that the development of the subject property for single-family residences on 12,000-square-foot lots would not be compatible with the surrounding area and that the people who had purchased property located in the immediate vicinity of the property in question relied upon the spacious feeling that was the attraction of that area. The testimony of a real estate appraiser and land use consultant on behalf of the city that the area in question was properly zoned "B-1" was based upon (1) the location of the subdivision; (2) the area in question and the area surrounding the property was properly zoned as "B-1"; and (3) the density did not increase until you departed from the subject property, went toward the continuously greater density and you arrived at the railroad tracks. Upon cross-examination he further stated that the subject property was the core of the "B-1" zoned area.

The trial court found that the ordinance was invalid as it applied to the property of the plaintiffs and this appeal followed.

The defendant contends that (1) the finding of the trial court is against the manifest weight of the evidence; (2) at best, there is a legitimate difference of opinion and that in such case the presumption is that the zoning is a valid exercise of the legislative power of the municipality; and (3) the court erred in excluding certain evidence by adjoining property owners as to their reliance on the existing zoning when they purchased their respective properties.

The courts of Illinois have repeatedly stated that zoning ordinances are presumed valid and that the burden is on the party challenging the validity of a zoning ordinance to prove by clear and convincing evidence that the ordinance, as applied to his property, is arbitrary and unreasonable and without substantial relationship to the public health, safety or welfare. (*Grobman v. City of Des Plaines* (1975), 59 Ill.2d 588, 593, 322 N.E.2d 443, 445; *Exchange National Bank v. County of Cook* (1962), 25 Ill.2d 434, 440, 185 N.E.2d 250, 253.) The presumption is based upon the " * * * recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare.' * * *" 59 Ill.2d 588, 593, 322 N.E.2d 443, 445.

In determining whether the party challenging the validity of the ordinance has met his burden of proof, the courts have considered numerous factors. In *Exchange National Bank v. County of Cook*, the supreme court in quoting from *La Salle National Bank v. County of Cook* (1957), 12

Ill.2d 40, 145 N.E.2d 65, set forth six such factors that could be taken into consideration in determining the validity of a zoning ordinance. The court then in *Exchange National Bank* went on to state, "The regulation of density, as related to land use, is a legitimate object of police power \* \* \*" and, "Where a legitimate dispute may exist as to the desirability of the classification imposed, it is clear that the courts should not intervene to substitute their judgment for that of the duly constituted legislative body." (25 Ill.2d 434, 441.) Or, as the court stated in *First National Bank v. City of Chicago* (1962), 25 Ill.2d 366, 368, 185 N.E.2d 181, 182, "Furthermore, minimum lot area limitations have been recognized as proper by this Court. [Citations.]" Most recently in *Grobman*, the supreme court again considered the zoning related to minimum area limitations and stated, "This court has recognized that minimum lot area limitations can be constitutionally imposed." (59 Ill.2d 588, 593.) The court then went on to state again, " "\* \* \* Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. \* \* \*" " (59 Ill.2d 588, 593.) See also *La Salle National Bank v. City of Evanston* (1974), 57 Ill.2d 415, 312 N.E.2d 625.

In *Village of Belle Terre v. Boraas* (1974), 416 U.S. 1, 39 L.Ed.2d 797, 94 S.Ct. 1536, the Supreme Court considered aesthetics an important factor in upholding the validity of a zoning ordinance. That court stated:

"A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one within Berman v. Parker, supra. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of a quiet seclusion and clear air make the area a sanctuary for people." 416 U.S. 9, 39 L.Ed.2d 797, 804, 94 S.Ct. 1536, 1541.

■■ In the instant case the same considerations are a valid basis for upholding this ordinance. The burden was upon the plaintiffs to show benefits derived by the community were outweighed by the injury incurred by them. Plaintiffs have failed to meet this burden. The only proven injury incurred by them was the deprivation of an opportunity to realize a greater profit than they will make as the property is presently zoned. That injury, which may be speculative, when weighed against the public interest, does not require this court to conclude that the present "B-1" zoning for the Forestwood Subdivision is arbitrary, unreasonable and unrelated to the general welfare of the public. It is clear to this court that the immediate area in which this subdivision is located may be char-

acterized in general as an exclusive area where the lots are and should remain in the 20,000 square foot area of "B-1" zoning as determined by the legislative body, the city of Highland Park.

The judgment of the circuit court of Lake County is reversed.

Judgment reversed.

SEIDENFELD, P. J., and HALLETT, J., concur.